**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

**DIRECT ENTERTAINMENT MEDIA**                    Chapter 11
**GROUP, INC.**                                             Case No. 13-22236 (RDD)

                    **Debtor.**
-------------------------------------------------------------x

### PLAN OF LIQUIDATION OF
### DIRECT ENTERTAINMENT MEDIA GROUP, INC.
### <u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>

**DICKSTEIN SHAPIRO LLP**
1633 Broadway
New York, New York 10019
Telephone:    (212) 277-6500
Facsimile:    (212) 277-6501

– and –

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007

*Co-counsel for Direct Entertainment*
*Media Group, Inc.*

Dated: July 17, 2013

**THIS PLAN OF LIQUIDATION IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL.  THIS PLAN OF LIQUIDATION HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  ACCORDINGLY, THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN OF LIQUIDATION.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

## TABLE OF CONTENTS

SECTION 1.  **DEFINITIONS AND INTERPRETATION.** .......................................................1

    **A.**       **DEFINITION.** ....................................................................................1

        1.1.    *2012 Senior Credit Agreement* .............................................1

        1.2.    *Administrative Bar Date Order* .............................................1

        1.3.    *Administrative Expense Claim* .............................................1

        1.4.    *Allowed* .................................................................................1

        1.5.    *Available Cash* ......................................................................1

        1.6.    *Bankruptcy Code* ..................................................................2

        1.7.    *Bankruptcy Court* .................................................................2

        1.8.    *Bankruptcy Rules* .................................................................2

        1.9.    *Business Day* ........................................................................2

        1.10.   *Cash* ......................................................................................2

        1.11.   *Causes of Action* ..................................................................2

        1.12.   *Chapter 11 Cases* .................................................................2

        1.13.   *Claim* ....................................................................................2

        1.14.   *Class* .....................................................................................2

        1.15.   *Commencement Date* ...........................................................3

        1.16.   *Confirmation* ........................................................................3

        1.17.   *Confirmation Date* ...............................................................3

        1.18.   *Confirmation Hearing* .........................................................3

        1.19.   *Confirmation Order* .............................................................3

        1.20.   *Consummation* .....................................................................3

        1.21.   *Creditors Committee* ............................................................3

        1.22.   *Debtors* .................................................................................3

1.23. *Debtors in Possession* ...................................................................................3

1.24. *DEMG* ...........................................................................................................3

1.25. *DEMG Case* ...................................................................................................3

1.26. *DEMG Estate* ................................................................................................3

1.27. *DIP Agent* .....................................................................................................3

1.28. *DIP Loan* .......................................................................................................3

1.29. *Disbursing Agent* ..........................................................................................4

1.30. *Disbursing Agent Agreement* .......................................................................4

1.31. *Disclosure Statement* .....................................................................................4

1.32. *Disclosure Statement Order* ..........................................................................4

1.33. *Disputed Claim* ..............................................................................................4

1.34. *Distribution Date* ...........................................................................................4

1.35. *Distribution Record Date* ..............................................................................4

1.36. *Effective Date* ................................................................................................4

1.37. *Entity* .............................................................................................................4

1.38. *Equity Interest* ...............................................................................................4

1.39. *Exculpated Parties* ........................................................................................4

1.40. *Fee Claim* .......................................................................................................5

1.41. *File, Filed, or Filing* ......................................................................................5

1.42. *Final Decree* ...................................................................................................5

1.43. *Final Order* .....................................................................................................5

1.44. *Final Report* ...................................................................................................5

1.45. *FTC* ................................................................................................................5

1.46. *FTC Action* ....................................................................................................5

1.47. *FTC Claims* ....................................................................................................5

1.48.   *FTC Settlement Order* ..................................................................5

1.49.   *FTC Stipulation* ..........................................................................5

1.50.   *General Unsecured Claim* ..........................................................5

1.51.   *Impaired* ....................................................................................6

1.52.   *Indenture* ...................................................................................6

1.53.   *Indenture Trustee* ......................................................................6

1.54.   *Indenture Trustee Fees* ..............................................................6

1.55.   *Initial Distribution* ....................................................................6

1.56.   *Initial Distribution Date* ...........................................................6

1.57.   *Interests* ....................................................................................6

1.58.   *Lien* ...........................................................................................6

1.59.   *Liquidating Debtor* ...................................................................6

1.60.   *Notice and Claims Agent* ..........................................................6

1.61.   *Notice and Hearing Requirements* ...........................................6

1.62.   *Other Priority Claim* .................................................................6

1.63.   *Parent Advance* .........................................................................7

1.64.   *RDA Holding* ............................................................................7

1.65.   *Person* .......................................................................................7

1.66.   *Plan* ...........................................................................................7

1.67.   *Priority Tax Claim* ....................................................................7

1.68.   *Proof of Claim* ..........................................................................7

1.69.   *Proof of Interest* .......................................................................7

1.70.   *Pro Rata* ....................................................................................7

1.71.   *Reader's Digest* .........................................................................7

1.72.   *Released Parties* ........................................................................7

iii

1.73.   *Releasing Parties* ...............................................................................8

1.74.   *Reorganization Plan* ..........................................................................8

1.75.   *Reorganization Plan Debtors* ............................................................8

1.76.   *Security* ...............................................................................................8

1.77.   *Secured Claim* ....................................................................................8

1.78.   *Senior Credit Agreement Claim* ........................................................8

1.79.   *Senior Noteholder Deficiency Claim* .................................................8

1.80.   *Senior Noteholders* ............................................................................9

1.81.   *Senior Notes* .......................................................................................9

1.82.   *Subordinated Securities Claims* ........................................................9

1.83.   *Tax Code* .............................................................................................9

1.84.   *Unimpaired* .........................................................................................9

1.85.   *Unsecured Term Lenders* ...................................................................9

1.86.   *Unsecured Term Loan* ........................................................................9

1.87.   *Unsecured Term Loan Claim* .............................................................9

1.88.   *Wind Down* ..........................................................................................9

1.89.   *Wind Down Reserve* ...........................................................................9

B.      **Interpretation; Application of Definitions and Rules of Construction.** ...........9

C.      **Reference to Monetary Figures.** ......................................................10

D.      **Controlling Document.** ...................................................................10

SECTION 2.   **ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.** .................10

2.1.    *Administrative Expense Claims.* .......................................................10

2.2.    *Fee Claims.* ........................................................................................11

2.3.    *Priority Tax Claims.* .........................................................................11

2.4.    *Indenture Trustee Fees.* ....................................................................11

iv

SECTION 3.    **CLASSIFICATION OF CLAIMS AND INTERESTS.** ...................................11

    3.1.    ***Summary of Classification.*** ..........................................................11

    3.2.    ***Special Provision Governing Unimpaired Claims.*** ....................................12

    3.3.    ***Elimination of Vacant Classes.*** ..................................................12

SECTION 4.    **TREATMENT OF CLAIMS AND INTERESTS.** ............................................12

    4.1.    ***Other Priority Claims (Class 1).*** ................................................12

    4.2.    ***Secured Claims (Class 2).*** ......................................................13

    4.3.    ***General Unsecured Claims (Class 3).*** ..........................................13

    4.4.    ***Equity Interests (Class 4).*** .....................................................13

SECTION 5.    **MEANS FOR IMPLEMENTATION.** ...................................................14

    5.1.    ***Wind Down.*** .....................................................................14

    5.2.    ***Continued Corporate Existence.*** .................................................15

    5.3.    ***Disposition of Assets.*** .........................................................16

    5.4.    ***Disbursing Agent.*** ..............................................................16

    5.5.    ***Allowance of Claims.*** ...........................................................17

    5.6.    ***Distributions.*** .................................................................17

    5.7.    ***Governance.*** ....................................................................17

    5.8.    ***Cancellation of Liens.*** .........................................................17

    5.9.    ***Corporate Action.*** ..............................................................17

    5.10.   ***Dissolution.*** ...................................................................18

    5.11.   ***Withholding and Reporting Requirements.*** .......................................18

    5.12.   ***Effectuating Documents; Further Transactions.*** .................................19

    5.13.   ***Closing of the DEMG Case.*** .....................................................19

SECTION 6.    **DISTRIBUTIONS.** .............................................................19

    6.1.    ***Distribution Record Date.*** .....................................................19

v

6.2.  *Date of Distributions.* ...................................................................19

6.3.  *Cancellation of Senior Notes.* .......................................................20

6.4.  *Delivery of Distributions.* .............................................................20

6.5.  *Manner of Payment Under Plan.* ..................................................20

6.6.  *Setoffs.* ..........................................................................................20

6.7.  *Distributions After Effective Date.* ..............................................20

6.8.  *Allocation of Distributions Between Principal and Interest.* .................21

6.9.  *Maximum Distributions Allowed.* ................................................21

6.10.  *Rounding of Payments.* ................................................................21

6.11.  *Minimum Cash Distributions* .......................................................21

SECTION 7.  **PROCEDURES FOR DISPUTED CLAIMS.** .........................21

7.1.  *Allowance of Claims.* ...................................................................21

7.2.  *Objections to Claims.* ...................................................................22

7.3.  *Estimation of Claims.* ...................................................................22

7.4.  *No Distributions Pending Allowance.* ..........................................22

7.5.  *Distributions After Allowance.* .....................................................22

7.6.  *Resolution of Claims.* ...................................................................22

7.7.  *Disallowed Claims.* .......................................................................23

SECTION 8.  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** .........23

8.1.  *General Treatment.* .......................................................................23

8.2.  *Rejection Claims.* ..........................................................................23

8.3.  *Insurance Policies.* ........................................................................23

8.4.  *Reservation of Rights.* ..................................................................23

SECTION 9.  **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.** .........24

9.1.  *Conditions Precedent to Confirmation.* ........................................24

9.2.    *Conditions Precedent to the Effective Date.* ............................................24

9.3.    *Waiver of Conditions Precedent.* ...............................................................24

9.4.    *Effect of Failure of Conditions to Effective Date.* ....................................24

SECTION 10. **EFFECT OF CONFIRMATION.**......................................................25

10.1.    *Subordinated Claims.* ..............................................................................25

10.2.    *Vesting of Assets.* ...................................................................................25

10.3.    *No Discharge of Claims.* ..........................................................................25

10.4.    *Term of Injunctions or Stays.* ..................................................................25

10.5.    *Injunction Against Interference with Plan.* ...............................................25

10.6.    *Exculpation.* ...........................................................................................26

10.7.    **Releases** ................................................................................................26

10.8.    *Retention of Causes of Action/Reservation of Rights.*...........................27

10.9.    *Solicitation of the Plan.* ...........................................................................27

SECTION 11.  **RETENTION OF JURISDICTION.**..................................................28

SECTION 12. **MISCELLANEOUS PROVISIONS.**................................................30

12.1.    *Payment of Statutory Fees.* .....................................................................30

12.2.    *Substantial Consummation.* ....................................................................30

12.3.    *Dissolution of Creditors Committee.* .......................................................30

12.4.    *Request for Expedited Determination of Taxes.* ....................................30

12.5.    *Amendments.* ..........................................................................................30

12.6.    *Effectuating Documents and Further Transactions.* ...............................31

12.7.    *Revocation or Withdrawal of the Plan.* ...................................................31

12.8.    *Severability of Plan Provisions upon Confirmation.*...............................31

12.9.    *Governing Law.* .......................................................................................31

12.10.  *Time.* .......................................................................................................31

12.11. *Immediate Binding Effect.*.........................................................................32

12.12. *Successor and Assigns.*..............................................................................32

12.13. *Entire Agreement.*.....................................................................................32

12.14. *Notices*......................................................................................................32

EXHIBIT 1    Disbursing Agent Agreement

Direct Entertainment Media Group, Inc. (hereinafter either "**DEMG**" or the "**Liquidating Debtor**") proposes the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.[1]

## SECTION 1.   DEFINITIONS AND INTERPRETATION.

### A.   DEFINITION.

1.1.    ***2012 Senior Credit Agreement*** means that certain Credit and Guarantee Agreement, dated as of March 30, 2012, by and among Reader's Digest as borrower, RDA Holding and each of the guarantors named therein including DEMG, Wells Fargo Principal Lending, LLC, as issuing lender, each of the other banks and lending institutions as lenders thereunder, and Wells Fargo Bank, National Association, as administrative agent.

1.2.    ***Administrative Bar Date Order*** means an order of the Bankruptcy Court fixing the deadline by which all Proofs of Claim for Administrative Expense Claims must be Filed.

1.3.    ***Administrative Expense Claim*** means any Claim against DEMG for costs and expenses of administration arising during the DEMG Case pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the DEMG Estate and operating the business of DEMG (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Fee Claims; and (c) all fees and charges assessed against the DEMG Estate pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-1401.

1.4.    ***Allowed*** means, with reference to any Claim against or Interest in DEMG, (a) any Claim or Interest arising on or before the Effective Date (i) as to which no objection to allowance has been interposed in accordance with Section 7.2 hereof, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Interest as to which the liability of DEMG and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court or (c) any Claim or Interest expressly allowed hereunder; *provided, however*, that notwithstanding the foregoing, DEMG shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise Unimpaired pursuant to the Plan.

1.5.    ***Available Cash*** means that Cash available for distribution to holders of Allowed General Unsecured Claims and shall be calculated, from to time, as that amount equal to (a) all Cash held, or received in the future by the Liquidating Debtor and cash received through the disposition of assets or otherwise, minus (b)(i) the Wind Down Reserve, (ii) those amounts necessary to pay Allowed Administrative Expense Claims, Allowed Secured Claims, Allowed Other Priority Claims and Allowed Priority Tax Claims in accordance with the Plan, and (iii) a reserve sufficient to pay Disputed Administrative Expense Claims, Disputed Secured

---

[1]        Capitalized terms used herein shall have the meanings set forth in Section 1.A.

Claims, Disputed Other Priority Claims and Disputed Priority Tax Claims, if such Claims were to be Allowed as asserted, unless a reserve in a different amount is agreed to by DEMG and the affected claimholder or set by order of the Bankruptcy Court.

1.6.    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.7.    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.8.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

1.9.    ***Business Day*** means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.10.    ***Cash*** means legal tender of the United States of America.

1.11.    ***Causes of Action*** means any action, claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.12.    ***Chapter 11 Cases*** means the Debtors' jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on or about February 17, 2013, and continuing immediately thereafter, in the Bankruptcy Court and styled *In re RDA Holding Co., et. al.*, Case No. 13- 22233 (RDD).

1.13.    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code

1.14.    ***Class*** means any group of Claims or Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

2

1.15.   ***Commencement Date*** means February 17, 2013 the date on which DEMG filed its voluntary petition for reorganization relief under chapter 11 of the Bankruptcy Code.

1.16.   ***Confirmation*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.17.   ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.18.   ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.19.   ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.20.   ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.21.   ***Creditors Committee*** means the official committee of unsecured creditors appointed in the Chapter 11 Cases.

1.22.   ***Debtors*** means collectively, the Reorganization Plan Debtors and DEMG.

1.23.   ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.24.   ***DEMG*** means Direct Entertainment Media Group, Inc., in its capacity as debtor, Debtor in Possession or the Liquidating Debtor, as the case may be.

1.25.   ***DEMG Case*** means DEMG's case under chapter 11 of the Bankruptcy Code, designated as Case No. 13-22236 (RDD), and jointly administered as one of the Chapter 11 Cases.

1.26.   ***DEMG Estate*** means the estate of DEMG created under section 541 of the Bankruptcy Code.

1.27.   ***DIP Agent*** means Wilmington Trust, National Association, as administrative agent for the DIP Lenders under the DIP Loan Agreement, as its permitted successor and assign.

1.28.   ***DIP Loan*** means that certain credit and guarantee agreement, dated as of February 22, 2013, as amended, supplemented, restated or otherwise modified, by and among, Reader's Digest, as borrower, RDA Holding and each of RDA Holding's direct and indirect domestic subsidiaries party thereto, as guarantors, the DIP Agent, Issuing Lender, the Roll-Up Lender and the New Money Lenders (each as defined in the Reorganization Plan).

3

1.29.   ***Disbursing Agent*** means Reader's Digest acting in its capacity as a disbursing agent under Section 5.4 hereof or such other designee named by DEMG, *provided however*, that any such designee must be approved by the Bankruptcy Court.

1.30.   ***Disbursing Agent Agreement*** means that certain agreement entered into by and between DEMG and Reader's Digest, dated July 17, 2013, and attached to the Plan as Exhibit 1, wherein Reader's Digest, <u>inter alia</u>, agreed to accept responsibility for acting as Disbursing Agent under the Plan.

1.31.   ***Disclosure Statement*** means the Disclosure Statement for the Plan, which is prepared and distributed in accordance with sections 1125, 1126(b), and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

1.32.   ***Disclosure Statement Order*** means an order entered by the Bankruptcy Court finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code.

1.33.   ***Disputed Claim*** means with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Interest for payment has been made, to the extent DEMG or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.34.   ***Distribution Date*** means such date or dates, including the Initial Distribution Date, as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to holders of Allowed Claims.

1.35.   ***Distribution Record Date*** means the Effective Date of the Plan.

1.36.   ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan as set forth in Section 9.2 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.37.   ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.38.   ***Equity Interest*** means any Interest in DEMG that existed immediately before the Commencement Date.

1.39.   ***Exculpated Parties*** means collectively: (a) DEMG; (b) the Creditors Committee; and (c) with respect to each of the foregoing entities, such entities' predecessors, successors and assigns, subsidiaries and affiliates, and current and former officers and directors, principals, shareholders, members, agents, financial advisors, attorneys, accountants, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, in each case in their capacity as such.

4

1.40.    **Fee Claim** means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by DEMG or the Creditors Committee pursuant to sections 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.41.    **File, Filed, or Filing** means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or with respect to the filing of a Proof of Claim or Proof of Interests, the Notice and Claims Agent.

1.42.    **Final Decree** has the meaning set forth in Bankruptcy Rule 3022.

1.43.    **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.44.    **Final Report** means the report Filed after the DEMG Estate is fully administered in furtherance of the Liquidating Debtor's motion for a Final Decree.

1.45.    **FTC** means the United States Federal Trade Commission.

1.46.    **FTC Action** means that certain action styled *Federal Trade Commission v. Fitness Brands, Inc., et al.*, Case No. 12-23065-CMA (S.D. Fl. 2012).

1.47.    **FTC Claims** means a General Unsecured Claim in the amount of $26,667,200, allowed pursuant to the FTC Stipulation.

1.48.    **FTC Settlement Order** means the Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief Against Defendants Direct Holdings Americas, Inc., and DEMG, and Relief Defendant Reader's Digest, dated August 27, 2012, entered in the FTC Action.

1.49.    **FTC Stipulation** means a certain stipulation dated May 28, 2013 and approved by an order of the Bankruptcy Court dated June 28, 2013.

1.50.    **General Unsecured Claim** means any unsecured Claim against DEMG that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, including without limitation, any FTC Claims and any Senior Noteholder Deficiency Claims.

1.51.    ***Impaired*** means, with respect to a Claim, Interest or Class of Claims or Class of Interests, "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.52.    ***Indenture*** means that certain Indenture, dated as of February 11, 2010 among RD Escrow Corporation, Reader's Digest, RDA Holding, and the subsidiary guarantors thereunder, the Indenture Trustee, and Wilmington Trust, National Association (as successor to Wilmington Trust FSB), as collateral agent.

1.53.    ***Indenture Trustee*** means Wilmington Trust, National Association (as successor by appointment to Wells Fargo Bank, National Association) in its capacity as the indenture trustee under the Indenture, and its permitted successors and assigns.

1.54.    ***Indenture Trustee Fees*** means the reasonable compensation, fees, expenses, disbursements and indemnity claims arising under the Indenture, including attorneys' and agents' fees, expenses, and disbursements, incurred under the Indenture by the Indenture Trustee, whether prior to or after the Commencement Date and whether prior to or after the Consummation of the Reorganization Plan.

1.55.    ***Initial Distribution*** means the first distribution that the Disbursing Agent makes to holders of Allowed Claims.

1.56.    ***Initial Distribution Date*** means the date occurring on or as soon as reasonably practicable after the Effective Date on which the Disbursing Agent makes the Initial Distribution to holders of Allowed Claims, but in no event more than sixty (60) days after DEMG receives a distribution pursuant to the Reorganization Plan on account of its allowed, general unsecured claim against the Reorganization Plan Debtors.

1.57.    ***Interests*** means any equity security in DEMG as defined in section 101(16) of the Bankruptcy Code, including all common stock, preferred stock or other instruments evidencing an ownership interest in DEMG, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in DEMG that existed immediately before the Effective Date.

1.58.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.59.    ***Liquidating Debtor*** means DEMG on and after the Effective Date.

1.60.    ***Notice and Claims Agent*** means Epiq Bankruptcy Solutions, Inc., in its capacity as notice and claims agent for the Debtors.

1.61.    ***Notice and Hearing Requirements*** has the meaning set forth in section 102(1) of the Bankruptcy Code.

1.62.    ***Other Priority Claim*** means any Claim against DEMG, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

1.63. **Parent Advance** means such amounts advanced by Reader's Digest, pursuant to the FTC Stipulation, to or for the benefit of DEMG for the purpose of paying DEMG's costs and expenses of implementing or administering the Plan or in effectuating the Wind Down, *provided, however*, that Reader's Digest's obligation to make such advances shall be limited to, and capped at, $50,000 in the aggregate, and shall be conditional on DEMG having insufficient cash or other resources (excluding (i) distributions made or to be made to DEMG pursuant to the Reorganization Plan, and (ii) the proceeds of any sale or other disposition of any DEMG assets) to pay such costs and expenses in full. Nothing herein contained shall limit or otherwise impair Reader's Digest's ability, in its sole discretion, to make advances to DEMG in excess of $50,000. To the extent that the proceeds of any Parent Advances held by DEMG have not been disbursed upon the entry of a Final Decree, such undisbursed proceeds shall be immediately turned over to Reader's Digest.

1.64. **RDA Holding** means RDA Holding Co.

1.65. **Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

1.66. **Plan** means this chapter 11 plan of liquidation, including the attached exhibit, as the same may be amended or modified from time to time in accordance with Section 12.5 herein.

1.67. **Priority Tax Claim** means any secured or unsecured Claim against DEMG of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.68. **Proof of Claim** means a proof of Claim Filed against DEMG in the Chapter 11 Cases.

1.69. **Proof of Interest** means a proof of Interest Filed against DEMG in the Chapter 11 Cases.

1.70. **Pro Rata** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Class under the Reorganization Plan.

1.71. **Reader's Digest** means The Reader's Digest Association, Inc.

1.72. **Released Parties** means, collectively, (a) the Disbursing Agent, (b) the Reorganization Plan Debtors, (c) the Consenting Senior Noteholders, (d) the Consenting Lender, (e) the Issuing Lender, (f) the Roll-Up Lender, (g) the Creditors Committee, and (h) with respect to each of (a) through (h) above, their respective directors, officers, shareholders, partners, members, employees, agents, affiliates, parents, predecessors, successors, attorneys, financial

advisors, investment bankers, accountants and other professionals or representatives when acting in such capacities.[2]

1.73.  ***Releasing Parties*** means, collectively (a) the Creditors Committee and the members thereof and (b) each holder of a Claim that affirmatively votes to accept the DEMG Plan, each solely in its capacity as such.

1.74.  ***Reorganization Plan*** means the Second Amended Joint Plan of Reorganization of Certain Debtors Under Chapter 11 of the Bankruptcy Code, Filed by the Reorganization Plan Debtors, as amended or modified from time to time, and as confirmed by the Bankruptcy Court by order dated June 28, 2013.

1.75.  ***Reorganization Plan Debtors*** means RDA Holding Co., The Reader's Digest Association, Inc., Ardee Music Publishing, Inc.; Pegasus Sales, Inc.; Pleasantville Music Publishing, Inc.; R.D. Manufacturing Corporation; Reiman Manufacturing, LLC; RD Publications, Inc.; Home Service Publications, Inc.; RD Large Edition, Inc.; RDA Sub Co. (f/k/a Books Are Fun, Ltd.); Reader's Digest Children's Publishing, Inc.; Reader's Digest Consumer Services, Inc.; Reader's Digest Entertainment, Inc.; Reader's Digest Financial Services, Inc.; Reader's Digest Latinoamerica, S.A.; WAPLA, LLC; Reader's Digest Sales and Services, Inc.; Taste of Home Media Group, LLC; Reiman Media Group, LLC; Taste of Home Productions, Inc.; World Wide Country Tours, Inc.; W.A. Publications, LLC; WRC Media, Inc.; RDCL, Inc. (f/k/a CompassLearning, Inc.); RDA Digital, LLC; RDWR, Inc. (f/k/a Weekly Reader Corporation); Haven Home Media, LLC (f/k/a Reader's Digest Sub Nine, Inc.); Weekly Reader Custom Publishing, Inc. (f/k/a Lifetime Learning Systems, Inc.); and World Almanac Education Group, Inc.

1.76.  ***Security*** means any security, as such term is defined in section 101(49) of the Bankruptcy Code.

1.77.  ***Secured Claim*** means a Claim against DEMG (other than an Administrative Expense Claim, a Priority Tax Claim or a 2012 Senior Credit Agreement Claim) to the extent (i) secured by property of the DEMG Estate, the amount of which is equal to or less than the value of such property (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and DEMG, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.78.  ***Senior Credit Agreement Claim*** means a Secured Claim, derived from, based upon, relating to or arising from the 2012 Senior Credit Agreement.

1.79.  ***Senior Noteholder Deficiency Claim*** means the General Unsecured Claims of the Senior Noteholders relating to or arising from the Indenture, in the total aggregate amount of $244,923,799.20.

---

[2]     With respect to (c) through (f), above, such terms used but not defined herein, are each defined in the Reorganization Plan.

1.80.   ***Senior Noteholders*** means the respective beneficial holders of the Senior Notes.

1.81.   ***Senior Notes*** means the Series A and Series B Floating Rate Senior Secured Notes due 2017 issued under the Indenture.

1.82.   ***Subordinated Securities Claims*** means a Claim subject to subordination under section 510(b) of the Bankruptcy Code, and any Claim for or that arises from the rescission of a purchase, sale, issuance or offer of a Security of DEMG, or for damages arising from the purchase of sale of such a Security, or for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.83.   ***Tax Code*** means the Internal Revenue Code of 1986, as amended from time to time.

1.84.   ***Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.85.   ***Unsecured Term Lenders*** means the holders of Unsecured Term Loan Claims.

1.86.   ***Unsecured Term Loan*** means that certain unsecured term loan credit and guarantee agreement, dated as of August 12, 2011, among RDA Holding, Reader's Digest, the other guarantors named thereunder, the lenders party thereto, and Luxor Capital Group, LP, as administrative agent.

1.87.   ***Unsecured Term Loan Claim*** means, pursuant to the 2011 Financing Settlement (as such term is defined in the Reorganization Plan), the General Unsecured Claims to be Allowed as Class 3 General Unsecured Claims, derived from, based upon, relating to or arising from the Unsecured Term Loan.

1.88.   ***Wind Down*** means the wind down of DEMG's affairs in accordance with the Plan, as such term is defined in Section 5.1.

1.89.   ***Wind Down Reserve*** means the sum of (a) $25,000 or such other amount determined by the Bankruptcy Court, subject to the Notice and Hearing Requirement, for the purpose of determining Available Cash until the final Distribution Date, and (b) thereafter, zero ($0) dollars.

B.   **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes of the Plan: (1) in the appropriate

context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

      C.      **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

      D.      **Controlling Document.**

In the event of an inconsistency between the Plan and the Disclosure Statement, the Plan shall control in all respects (unless stated otherwise in the Plan). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, that* if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

SECTION 2. **ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.**

      2.1.    ***Administrative Expense Claims.***

      (a)    ***Bar Date.***   Any Entity that has and wishes to assert an Administrative Expense Claim (other than a Fee Claim) against DEMG shall be obligated to timely file a Proof of Claim therefor in accordance with the procedures set forth by the Bankruptcy Court in the Administrative Bar Date Order, failing which such Entity shall be forever barred from seeking payment of such Claim or otherwise seeking to enforce its rights with respect to such Claim against DEMG.

      (b)    ***Payment.***   Except to the extent that a holder of an Allowed Administrative Expense Claim and DEMG agree to different treatment, the Liquidating Debtor shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

### 2.2.    *Fee Claims.*

All Entities seeking an award by the Bankruptcy Court of Fee Claims against DEMG (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the day that is forty-five (45) days after the Effective Date, (b) shall be paid in full by the Liquidating Debtor in such amounts as Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Liquidating Debtor. The Liquidating Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid by the Liquidating Debtor (a) in full, in Cash, in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, (ii) the first Business Day after the day that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim becomes due and payable in the ordinary course, or (b) in equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim commencing on, or as soon thereafter as is reasonably practicable,  the later of the dates specified in clause (a), together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years after the Commencement Date; provided that, in the case of clause (b), such payments must be made in a manner not less favorable than the most favored non-priority unsecured Claim provided for under the Plan, and DEMG reserves the right to prepay all or a portion of such Allowed Priority Tax Claim at any time.

### 2.4.    *Indenture Trustee Fees.*

Any and all Indenture Trustee Fees shall be satisfied in accordance with the provisions of the Reorganization Plan and the Liquidating Debtor shall have no liability with respect to the payment or other satisfaction of the Indenture Trustee Fees.

### SECTION 3.    **CLASSIFICATION OF CLAIMS AND INTERESTS.**

### 3.1.    ***Summary of Classification.***

The following table designates the Classes of Claims against, and Interests in, DEMG and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.  All of the potential Classes of Claims and Interests are set forth herein.  Based upon the confirmation of the Reorganization Plan and the treatment provided thereunder to the Claims of Senior Noteholders

11

and the Claims of the Unsecured Term Lenders, Senior Noteholders do not have a Secured Claim, and the Unsecured Term Lenders do not have a General Unsecured Claim, against DEMG, and, accordingly, no such Claims have been classified.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Impaired[3] | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Equity Interests | Impaired | Yes |

### 3.2.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of DEMG, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.3.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

## SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS.

### 4.1.    *Other Priority Claims (Class 1).*

(a)    *Classification*: Class 1 consists of all Other Priority Claims.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim,

---

[3]    DEMG reserves the right to argue at the Confirmation Hearing that Class 2 (Secured Claims) is Unimpaired.

payable on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, in each case, or as soon as reasonably practical thereafter.

(c)      *Voting*: Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 4.2.   *Secured Claims (Class 2).*

(a)      *Classification*: Class 2 consists of all Secured Claims.   To the extent that Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

(b)      *Treatment*: Except to the extent that a holder of an Allowed Secured Claim has agreed to less favorable treatment of such Claim, each holder of an Allowed Secured Claim shall receive in full and final satisfaction of such Claim, at DEMG's option, either (i) Cash in amount equal to such Claim, payable on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim, or, in each case, as soon as reasonably practical thereafter, or (ii) delivery of the collateral securing such Allowed Secured Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code, or (iii) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

(c)      *Voting*: Class 2 is Impaired, and holders of Secured Claims in Class 2 are entitled to vote to accept or reject the Plan; *provided, however*, that DEMG reserves the right to argue at the Confirmation Hearing that Class 2 (Secured Claims) is Unimpaired.

### 4.3.   *General Unsecured Claims (Class 3).*

(a)      *Classification*: Class 3 consists of all General Unsecured Claims.

(b)      *Treatment*: On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim, shall receive its *Pro Rata* share of Available Cash, *provided, however*, that the holders of Senior Noteholder Deficiency Claims have waived their distribution pursuant to the FTC Stipulation.

(c)      *Voting*: Class 3 is Impaired, and holders of General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.  For the avoidance of doubt, the holders of Senior Noteholder Deficiency Claims are entitled to vote to accept or reject the Plan as holders of General Unsecured Claims in Class 3.

### 4.4.   *Equity Interests (Class 4).*

(a)      *Classification*: Class 4 consists of all Equity Interests.

13

(b)    *Treatment*: The holder of the Equity Interests shall retain such Interests, *provided, however,* that no distribution of any property of the Liquidating Debtor shall be made to such holder unless and until all General Unsecured Claims are paid in full with applicable interest and *provided, further*, that once all distributions under the Plan have been made, the Liquidating Debtor shall be dissolved and such Interests shall be cancelled and of no further effect.

(c)    *Voting*: Class 4 is Impaired, and holders of Equity Interests in Class 4 are entitled to vote to accept or reject the Plan.

SECTION 5.   **MEANS FOR IMPLEMENTATION.**

5.1.   ***Wind Down.***

From and after the Effective Date, the Liquidating Debtor, subject to other provisions of this Plan, shall take such actions as may be reasonably calculated to maximize the recovery to holders of Claims.

The Liquidating Debtor shall have the power and authority to perform the following acts (together, the "**Wind Down**"), in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court; *provided, however,* that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Debtor to act as specifically authorized by any other provision of the Plan or orders of the Bankruptcy Court, and to act in such manner as may be necessary or desirable to discharge all obligations assumed by the Liquidating Debtor as provided herein, including without limitation and by example only:

(a)    determine tax issues or liabilities in accordance with section 505 of the Bankruptcy Code;

(b)    resolve any objections to the allowance or priority of Claims, Administrative Expenses Claims or Interests;

(c)    resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense Claims or Interests pursuant to the Plan;

(d)    distribute Cash in the DEMG Estate to creditors consistent with the terms of the Plan;

(e)    perfect and secure the Liquidating Debtor's right, title and interest to property of the DEMG Estate;

(f)    manage and protect property of the DEMG Estate and distribute the net proceeds of the sale of such property consistent with the terms of the Plan;

14

(g)     purchase or continue insurance to protect the Liquidating Debtor and property of the DEMG Estate;

(h)     deposit DEMG funds, draw checks and make disbursements thereof consistent with the terms of the Plan;

(i)     employ, retain and compensate, and discharge and dismiss, without further order of the Bankruptcy Court, professionals as the Liquidating Debtor may deem necessary or desirable to assist in fulfilling the purposes of the Plan, including the continued retention and payment of professionals in connection with any ongoing litigation or other matters pursued or conducted by the Liquidating Debtor whether on an hourly, flat fee or contingency basis;

(j)     commence or prosecute in the name of the Liquidating Debtor any lawsuit or other legal or equitable action (except to the extent released pursuant to the terms of the Plan), including, without limitation, filing objections to, or estimation of, Claims, in any court of competent jurisdiction, which are necessary to carry out the terms and conditions of the Plan;

(k)     settle, compromise or adjust any disputes or controversies in favor of, or against, the Liquidating Debtor;

(l)     incur and pay all Plan expenses and reasonable costs and expenses incident to the performance of the duties of the Liquidating Debtor under the Plan, including without limitation, reasonable rent for office space and storage, office supplies, travel and expense reimbursement, insurance, and other obligations;

(m)     prepare and file tax returns, as mandated by applicable local, state, federal and foreign law;

(n)     seek entry of a Final Decree at the appropriate time; and

(o)     take such other actions as the Liquidating Debtor may determine to be necessary or desirable to carry out the purpose of the Plan.

5.2.    ***Continued Corporate Existence.***

From and after the Effective Date through and including the date of its dissolution under applicable law, (a) the Liquidating Debtor will continue to exist as a separate corporation, and (b) the Liquidating Debtor shall retain all of the powers of corporations under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence, provided that the Liquidating Debtor's sole purpose from and after the Effective Date will be to make

15

distributions to creditors holding Allowed Claims consistent with the Plan and to otherwise effectuate the Wind Down.

### 5.3.    *Disposition of Assets.*

The Liquidating Debtor shall monetize all property of the DEMG Estate, subject to the following conditions:

(a)    *Court approval*.    Bankruptcy Court approval shall not be necessary for any disposition of property of the DEMG Estate if such property is sold for Cash for its fair market value in an arm's length transaction with a party unrelated to the Debtors.  All other dispositions of property of the DEMG Estate shall be subject to the Notice and Hearing Requirements.

(b)    *Sale Proceeds.*  Except with Bankruptcy Court approval, all sales of property of the DEMG Estate shall be for Cash.

(c)    *Abandonment.*    The Liquidating Debtor may abandon any property of the DEMG Estate which, in the exercise of its business judgment, the Liquidating Debtor reasonably believes is burdensome to the DEMG Estate or is of inconsequential value and benefit to the DEMG Estate.

### 5.4.    *Disbursing Agent.*

The Disbursing Agent shall make all distributions required under this Plan in accordance with the Disbursing Agent Agreement, *provided however*, for the avoidance of doubt the Disbursing Agent shall have no obligation to reconcile claims.  Upon the Effective Date, Reader's Digest shall serve as the initial Disbursing Agent pursuant to the Disbursing Agent Agreement.  Except as otherwise provided in the Disbursing Agent Agreement, the Disbursing Agent shall be entitled to receive from the DEMG Estate reasonable compensation for its services as disbursing agent and shall be entitled to reimbursement of all of its reasonable out-of-pocket expenses incurred in connection with its services as Disbursing Agent.  All payments made to the Disbursing Agent shall be disclosed in the Final Report, but shall not be subject to Bankruptcy Court approval.

The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties, and all reasonable fees and expenses incurred by such Disbursing Agent shall be reimbursed by the Liquidating Debtor, except as otherwise provided in the Disbursing Agent Agreement.

The Disbursing Agent shall hold the Available Cash in a segregated non-interest bearing account.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (b) make all distributions contemplated hereby and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

Pursuant to the Disbursing Agent Agreement, in consideration for serving as the Disbursing Agent, Reader's Digest shall be entitled to certain indemnifications, exculpations and releases arising out of or relating to the Disbursing Agent Agreement and the services provided thereunder.  *See* Section 2(f) of the Disbursing Agent Agreement.

### 5.5.    *Allowance of Claims.*

All Claims and Interests asserted against the DEMG Estate shall be subject to allowance or disallowance in accordance with the Bankruptcy Code and Bankruptcy Rules, consistent with the process set forth in Section 7 of this Plan.

### 5.6.    *Distributions.*

All distributions to holders of Allowed Claims shall be made by the Disbursing Agent in accordance with Section 6 of this Plan and the Disbursing Agent Agreement.

### 5.7.    *Governance.*

From and after the Effective Date, the Liquidating Debtor shall be managed and administered by its board of directors, so long as such board has at least one member.  Any vacancies on the board of directors shall be filled in accordance with DEMG's organization documents.  As of the Effective Date, the provisions of this Plan applicable to the corporate governance of the Liquidating Debtor shall supersede any contrary provision of the certificate of incorporation, bylaws, or certificate of incorporation of the Liquidating Debtor, which are hereby deemed amended to so provide.

### 5.8.    *Cancellation of Liens.*

Except as otherwise specifically provided herein with respect to Class 2, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Liquidating Debtor (including any Cash collateral) held by such holder and to take such actions as may be requested by the Liquidating Debtor, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Liquidating Debtor.

### 5.9.    *Corporate Action.*

On the Effective Date, the matters under the Plan involving or requiring corporate action of DEMG, including but not limited to actions requiring a vote or other approval of DEMG's board of directors or shareholders, or the execution of any documentation incident to or in furtherance of the Plan shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of DEMG.

On the Effective Date, DEMG's charter shall be amended, if necessary, to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.  The Liquidating Debtor

17

may prepare, execute and/or file with the Delaware Secretary of State and other state governmental authorities having jurisdiction over the Liquidating Debtor such amendments of its charter as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate such amendment.

Notwithstanding anything to the contrary in the Plan, neither the Disbursing Agent nor the Liquidating Debtor nor their respective officers and/or directors shall be liable as a result of any action taken in accordance with the provisions of the Plan, and after the entry of the Final Decree, neither its officers nor its directors shall have any responsibility for the Liquidating Debtor, including any further responsibility for the management, supervision, administration, liquidation, winding up, or cancellation of the charter of the Liquidating Debtor.

### 5.10. *Dissolution.*

Upon the completion of the Wind Down and the entry of a Final Decree, DEMG shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of DEMG or payments to be made in connection therewith; *provided, however,* that DEMG, or an agent on behalf of DEMG, shall file with the Office of the Delaware Secretary of State a certificate of dissolution which may be executed by an officer of DEMG, or an agent on behalf of DEMG, without the need for approval by any board of directors, stockholders, members, or managers as applicable. From and after the date of the entry of the Final Decree, DEMG shall not be required to file any document, or take any other action, or obtain any approval from any DEMG board of directors, stockholders, members, or managers to withdraw DEMG's business operations from any state in which DEMG previously conducted business operations.

### 5.11. *Withholding and Reporting Requirements.*

(a)  *Withholding Rights.*  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)  *Forms.*  Any party entitled to receive any property as a distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Liquidating Debtor (which entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the Tax Code and so notifies the Disbursing Agent. If such request is made by the Liquidating Debtor, the Disbursing Agent, or such other Person designated by the Liquidating Debtor and the holder

fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidating Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Liquidating Debtor or its respective property.

### 5.12.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Liquidating Debtor and the officers and members of the board of directors thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Liquidating Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 5.13.    *Closing of the DEMG Case.*

After the DEMG Estate has been fully administered, the Liquidating Debtor shall promptly seek a Final Decree.

## SECTION 6.    DISTRIBUTIONS.

### 6.1.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by DEMG or its agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests.  DEMG shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

### 6.2.    *Date of Distributions.*

Except as otherwise provided herein, the Disbursing Agent shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Disbursing Agent shall from time to time determine, the subsequent Distribution Dates, which shall occur no less frequently than semi-annually.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

In the event the holders of Allowed General Unsecured Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Disbursing Agent shall make a final distribution of all remaining Available Cash to all holders of Allowed General Unsecured Claims.

19

### 6.3. *Cancellation of Senior Notes.*

Each record holder of a Senior Note Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentations shall be deemed to be canceled except to the extent otherwise provided herein.  Such surrendered Senior Notes shall be cancelled solely with respect to DEMG, and such cancellation shall not alter the obligations or rights of any third parties vis-à-vis one another with respect to such Senior Notes.

### 6.4. *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made by the Disbursing Agent.  In the event that any distribution to any holder is returned as undeliverable, no further distributions shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter.  Undeliverable distributions or unclaimed distributions shall remain in the possession of the Liquidating Debtor until such time as a distribution becomes deliverable or holder accepts distribution, or such distribution reverts back to the Liquidating Debtor, as applicable, and shall not be supplemented with any interest, dividends or other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the date of distribution.  After such date, all unclaimed property or interest in property shall revert to the Liquidating Debtor, and the claim of any holder to such property or interest in property shall be discharged and forever barred.  Distributions to holders of General Unsecured Claims that are deemed unclaimed property pursuant to the preceding sentence shall be redistributed to the holders of Allowed General Unsecured Claims in accordance with Section 4.4 herein.

### 6.5. *Manner of Payment Under Plan.*

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 6.6. *Setoffs.*

The Liquidating Debtor may, but shall not be required to, set off against any Claim, any claims of any nature whatsoever that DEMG may have against the holder of such Claim; *provided, that* neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by DEMG of any such claim DEMG may have against the holder of such Claim.

### 6.7. *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.8.    ***Allocation of Distributions Between Principal and Interest.***

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

6.9.    ***Maximum Distributions Allowed.***

No holder of an Allowed General Unsecured Claim shall receive distributions that aggregate more than the amount of such holder's Allowed General Unsecured Claim.

6.10.   ***Rounding of Payments.***

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such faction to the nearest whole cent, such Cash shall be treated as unclaimed property under the Plan.

6.11.   ***Minimum Cash Distributions***

The Disbursing Agent shall not be required to make any Initial Distribution or subsequent distribution of Cash less than $25 to any holder of an Allowed General Unsecured Claim; *provided, however*, that if any distribution is not made pursuant to this section, such distribution shall be added to any subsequent distribution to be made on account of the holder's Allowed Claim.  The Disbursing Agent shall not be required to make any final distributions of Cash less than $5 to any holder of an Allowed Claim.  If either (a) all Allowed General Unsecured Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed General Unsecured Claims would be $5 or less and the aggregate amount of cash available for distributions to holders of Allowed General Unsecured Claims is less than $5,000, then no further distribution shall be made by the Disbursing Agent and any surplus Cash shall be donated and distributed to an I.R.C. § 501(c)(3) tax-exempt organization selected by the Liquidating Debtor.

SECTION 7.   **PROCEDURES FOR DISPUTED CLAIMS.**

7.1.    ***Allowance of Claims.***

After the Effective Date, DEMG shall have and shall retain any and all rights and defenses that DEMG had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

21

7.2.    ***Objections to Claims.***

As of the Effective Date, objections to, and requests for estimation of, Claims against DEMG may be interposed and prosecuted only by DEMG.  Such objections and requests for estimation shall be served and filed (a) on or before the 180th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Liquidating Debtor.

7.3.    ***Estimation of Claims.***

DEMG may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether DEMG previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, DEMG may pursue supplementary proceedings to object to the allowance of such Claim.    All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4.    ***No Distributions Pending Allowance***.

If an objection to a Claim is filed as set forth in Section 7.2, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.5.    ***Distributions After Allowance.***

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  On the next Distribution Date after the date that any Disputed Claim becomes an Allowed Claim (whether by Final Order of the Bankruptcy Court or otherwise), the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

7.6.    ***Resolution of Claims.***

On and after the Effective Date, the Liquidating Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

7.7.    *Disallowed Claims.*

All claims held by Persons or Entities against whom or which DEMG has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" claims pursuant to section 502(d) of the Bankruptcy Code and holders of such claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to DEMG from such party have been paid.

SECTION 8.    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

8.1.    *General Treatment.*

All executory contracts and unexpired leases to which DEMG is a party are rejected as of the Effective Date, except for any executory contract or unexpired lease that is an insurance policy subject to Section 8.3 of the Plan.

8.2.    *Rejection Claims*.

Unless a contract or lease is (a) specifically assumed or rejected by order of the Bankruptcy Court, (b) otherwise expressly assumed pursuant to the terms of the Plan, or (c) the subject of a separate assumption or rejection motion filed by DEMG, the Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of all the leases and contracts, in accordance with Section 8.1 of the Plan, effective as of the Effective Date.  In the event that the rejection of an executory contract or unexpired lease by DEMG pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a timely filed Proof of Claim, shall be forever barred and shall not be enforceable against DEMG, or its respective properties or interests in property as agents, successors or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Liquidating Debtor no later than thirty (30) days after the later of (1) the Confirmation Date or (2) the effective date of rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified as Class 3 General Unsecured Claims.

8.3.    *Insurance Policies.*

All insurance policies pursuant to which DEMG has any rights or obligations in effect as of the date of the Confirmation Order shall continue to be enforced and treated as being unaffected by the bankruptcy filing.

8.4.    *Reservation of Rights.*

Nothing contained in the Plan will constitute an admission by DEMG that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that DEMG has any liability thereunder.

23

Nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of DEMG under any executory or non executory contract or any unexpired or expired lease.

Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities DEMG under any executory or non executory contract or any unexpired or expired lease.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, DEMG shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

SECTION 9.    **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.**

9.1.    *Conditions Precedent to Confirmation.*

The occurrence of Confirmation is subject to the following conditions precedent:

(a)    the entry of the Disclosure Statement Order;

(b)    the entry of the Confirmation Order; and

(c)    the execution of the Disbursing Agent Agreement by the parties thereto.

9.2.    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Confirmation Date shall have occurred and the Confirmation Order shall have become a Final Order; and

(b)    the Reorganization Plan shall have been substantially consummated.

9.3.    *Waiver of Conditions Precedent.*

Each of the conditions precedent in Sections 9.1 and 9.2 may be waived in writing by DEMG with Bankruptcy Court approval.

9.4.    *Effect of Failure of Conditions to Effective Date.*

If the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) DEMG and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all of DEMG's obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against DEMG or any other entity or to prejudice in any manner the

24

rights of DEMG or any other entity in any further proceedings involving the Plan, DEMG or otherwise.

SECTION 10. **EFFECT OF CONFIRMATION.**

10.1. ***Subordinated Claims.***

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, DEMG reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

10.2. ***Vesting of Assets.***

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the DEMG Estate, shall remain vested in DEMG free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided pursuant to this Plan and the Confirmation Order.

10.3. ***No Discharge of Claims.***

Except as otherwise provided in the Plan, with respect to unclaimed distributions and late filed Claims, DEMG shall not be discharged, pursuant to section 1141(d)(3)(A) of the Bankruptcy Code, from any Claim. The Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan. All Entities shall be precluded from asserting against the Liquidating Debtor and the DEMG Estate, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

10.4. ***Term of Injunctions or Stays.***

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5. ***Injunction Against Interference with Plan.***

From and after the Effective Date, all entities are permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, in the Bankruptcy Court or otherwise, on account of or respecting any Claim against, or Interest in, DEMG, except with respect to the allowance of such Claim or Interest in accordance with the Plan.

10.6.   **Exculpation.**

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any claim, obligation, cause of action or liability for any claim in connection with or arising out of, the administration of the DEMG Case, the negotiation and pursuit of the Plan, or the solicitation of votes for, or confirmation of, the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any other transaction contemplated by the foregoing, except for willful misconduct or gross negligence, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided, however*, that nothing in the Plan shall limit the liability of DEMG's professionals to its client pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009), and any other statutes, rules or regulation dealing with professional conduct to which such professionals are subject.

Furthermore, pursuant to the Disbursing Agent Agreement, upon the Effective Date, the Disbursing Agent is hereby released and exculpated from any claim, obligation, cause of action or liability for any claim arising in connection with its duties under the Disbursing Agent Agreement.

10.7.   **Releases**

(a)     ***Releases by DEMG***.  Subject to Section 10.7(c), as of the Effective Date and to the fullest extent permitted by applicable law, for good and valuable consideration, including the services to facilitate the Plan, the Released Parties will be deemed released and discharged by DEMG, the Liquidating Debtor and the DEMG Estate from any and all Claims, obligations, rights suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that DEMG, the Liquidating Debtor or the DEMG Estate would have been legally entitled to assert, other than any act or omission that is a criminal act or constitutes intentional fraud; *provided, however*, that nothing in the Plan shall limit the liability of DEMG's professionals to its client pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009), and any other statutes, rules or regulation dealing with professional conduct to which such professionals are subject.

(b)     ***Releases by Holders of Claims.***  Subject to Section 10.7(c), as of the Effective Date and to the fullest extent permitted by applicable law, for good and valuable consideration, including the waiver by the Consenting Senior Noteholders of their right to receive distributions on account of their Claims, the release an discharge by the Consenting Lender, the Issuing Lender and the Roll-Up Lender of the liens and security interests granted by DEMG in connection with the 2012 Credit Agreement and the DIP Loan Agreement, and the Reorganization Plan Debtors' release of certain claims against DEMG, the Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such entity would have been legally entitled to assert arising from, in whole or in part, any transaction with DEMG, the

Liquidating Debtor or the DEMG Estate, other than any act or omission that is a criminal act or constitutes intentional fraud.

(c)    ***Obligations Under Plan Not Released.***  Notwithstanding anything in the Plan to the contrary, the Release provisions set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument or agreement executed to implement the Plan.

### 10.8.    *Retention of Causes of Action/Reservation of Rights.*

(a)    Except as otherwise provided herein, including Sections 10.6 and 10.7, pursuant to section 1123(b) of the Bankruptcy Code, DEMG shall retain and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, that DEMG or the DEMG Estate may hold against any Person or Entity without the approval of the Bankruptcy Court, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against DEMG, its officers, directors or representatives; and (ii) the turnover of any property of the DEMG Estate; *provided, however* that DEMG shall not retain any Claims or Causes of Action arising under chapter 5 of the Bankruptcy Code against holders of Allowed General Unsecured Claims (except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures). DEMG or its successor(s) may pursue such retained claims, rights, or causes of action, suits or proceedings, as appropriate, in accordance with the best interests of DEMG or its successor(s) who hold such rights.

(b)    Except as otherwise provided herein, including Sections 10.6 and 10.7, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff or other legal or equitable defense which DEMG had immediately before the Commencement Date, against or with respect to any Claim left Unimpaired by the Plan; *provided, however* that DEMG shall not retain any Claims or Causes of Action arising under chapter 5 of the Bankruptcy Code against holders of Allowed General Unsecured Claims (except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures). DEMG shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses which they had immediately before the Commencement Date with respect to any Claim left Unimpaired by the Plan as if the Chapter 11 Cases had not been commenced, and all of DEMG's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the DEMG Case had not been commenced.

### 10.9.    *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date, DEMG shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a)

and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

SECTION 11. **RETENTION OF JURISDICTION.**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the DEMG Case for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all applications under sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the

Confirmation Order or any agreement, instrument or other document governing or relating to any of the foregoing;

(j)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation;

(k)     to hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code for periods through the dissolution of DEMG);

(n)     to adjudicate, decide, or resolve any Causes of Actions;

(o)     to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(p)     to resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid;

(q)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(r)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(s)     to enter a Final Decree closing the DEMG Case;

(t)     to recover all assets of the Liquidating Debtor and property of the DEMG Estates, wherever located; and

(u)     to hear and determine any rights, Claims or causes of action held by or accruing to DEMG pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

29

SECTION 12. **MISCELLANEOUS PROVISIONS.**

    12.1.   ***Payment of Statutory Fees.***

        On the Effective Date and thereafter as may be required, DEMG shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the DEMG Case or until such time as a Final Decree is entered closing the DEMG Case, a Final Order converting the DEMG Case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing such the DEMG Case is entered.

    12.2.   ***Substantial Consummation.***

        On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

    12.3.   ***Dissolution of Creditors Committee.***

        Unless dissolved earlier pursuant to the terms of the Reorganization Plan, the Creditors Committee shall be dissolved as of the Effective Date.

    12.4.   ***Request for Expedited Determination of Taxes.***

        DEMG shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date.

    12.5.   ***Amendments.***

        (a)   ***Plan Modifications***.  The Plan may be amended, modified or supplemented by DEMG in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, DEMG may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

        (b)   ***Other Amendments***.  Before the Effective Date, DEMG may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; *provided*, *however*, that any such adjustments or modifications shall not materially and adversely affect the economic interests of any holder of a Claim or Interest. In accordance with the Disbursing Agent Agreement, the Disbursing Agent Agreement may not be amended, modified or supplemented by Reader's Digest and DEMG without the consent of the Consenting Senior Noteholders.

12.6. ***Effectuating Documents and Further Transactions.***

Each of the officers of DEMG is authorized, in accordance with his or her authority under the resolutions of DEMG's board of directors, to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.7. ***Revocation or Withdrawal of the Plan.***

DEMG may revoke or withdraw the Plan only if it is in the exercise DEMG's fiduciary duty. If DEMG takes such action, the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims by or against DEMG or any other person or to prejudice in any manner the rights of DEMG or any person in further proceedings involving DEMG.

12.8. ***Severability of Plan Provisions upon Confirmation.***

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of DEMG, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of DEMG; and (3) nonseverable and mutually dependent.

12.9. ***Governing Law.***

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.10. ***Time.***

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.11. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of DEMG, the holders of Claims and Interests, the Exculpated Parties and each of their respective successors and assigns.

12.12. *Successor and Assigns.*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

12.13. *Entire Agreement.*

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.14. *Notices*.

All notices, requests and demands to or upon DEMG to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

      (i)     if to DEMG:

           DIRECT ENTERTAINMENT MEDIA GROUP, INC.
           c/o RDA Holding Co.
           44 South Broadway
           White Plains, New York 10601
           Facsimile:    (914) 244-7810
           Attn:  Andrea Newborn, Esq.

         – and –

           DICKSTEIN SHAPIRO LLP
           1633 Broadway
           New York, NY 10019
           Attn:  Barry N. Seidel, Esq.
                   Katie L. Weinstein, Esq.
                   Evan J. Zucker, Esq.
           Telephone:    (212) 277-6500
           Facsimile:    (212) 277-6501

– and –

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Joseph H. Smolinsky, Esq.
            Marcia L. Goldstein, Esq.
            Matthew P. Goren, Esq.
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007

(ii)      if to the Disbursing Agent:

THE READER'S DIGEST ASSOCIATION, INC.
44 South Broadway
White Plains, New York 10601
Attn:   William Magill

After the Effective Date, DEMG has the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.   After the Effective Date, DEMG is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:    White Plains, New York
          July 17, 2013

Respectfully submitted,

Direct Entertainment Media Group, Inc.

By: _____

Name: Andrea Newborn
Title: Secretary

[Signature Page to DEMG Plan]

34

# <u>Exhibit 1</u>

**Disbursing Agent Agreement**

## DISBURSING AGENT AGREEMENT

This DISBURSING AGENT AGREEMENT (this "**Agreement**"), dated as of July __, 2013, is made and entered into between Direct Entertainment Media Group, Inc. (the "**Company**") and Reader's Digest Association, Inc. ("**RDA**"). Each of the Company and RDA are sometimes referred to herein as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A.    RDA owns all of the issued and outstanding equity interests of the Company;

B.    RDA and the Company both filed petitions for relief under Chapter 11 of the Bankruptcy Code on February 17, 2013 and their respective Chapter 11 cases are pending in the United States Bankruptcy Court For the Southern District of New York (the "**Court**");

C.    RDA, together with its Chapter 11 filing affiliates other than the Company (collectively, the "**Reorganization Debtors**"), filed their Second Amended Joint Plan of Reorganization dated May 7, 2013 which was confirmed by order of the Court dated June 28, 2013. The Company intends to propose its own plan of liquidation. The Company has provided RDA with a draft of such plan. (As used herein, "**Liquidation Plan**" shall mean (i) a plan of liquidation containing terms and conditions substantially similar to the Company's July 15, 2013 draft plan of liquidation or (ii) such other plan acceptable to RDA). All terms not defined herein shall have the respective meanings ascribed to such terms in the Liquidation Plan;

D.    RDA and the Company are parties to a certain stipulation (the "**Stipulation**") approved by order of the Court dated July 1, 2013, which resolves, *inter alia*, the claims between the Company, on the one hand, and the Company and RDA and its corporate affiliates, on the other hand. Pursuant to the Stipulation, RDA has agreed to provide at least $50,000 of financial support to defray the Company's costs of implementing and/or administering the Liquidation Plan or otherwise winding up its affairs (the "**Parent Advances**"); and

E.    The Parties wish to memorialize RDA's agreement to serve as disbursing agent under the Liquidation Plan.

NOW, THEREFORE, in consideration of the foregoing and the promises, mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

Section 1.    Support of Liquidation Plan.

(a)    RDA. So long as the Company shall seek confirmation of the Liquidation Plan, RDA shall, and shall cause its representatives, agents and employees to: (i) use its and their respective commercially reasonable efforts to facilitate the solicitation, approval, confirmation and consummation of the Liquidation Plan on a timely basis; and (ii) not object to, challenge, vote to reject, or otherwise take any action or commence or participate, directly or indirectly, in any proceeding opposing any of the terms of the Liquidation Plan; provided, however, prior to voting on the Liquidation Plan (whether in

accordance with the provisions of this Section 2(b) or any other provision of this Agreement), RDA shall have received a disclosure statement in compliance with 11 U.S.C. § 1125.

(b)     Company.  So long as it shall seek confirmation of the Liquidation Plan, the Company shall, and shall (i) use its and their respective commercially reasonable efforts to facilitate the solicitation, approval, confirmation and consummation of the Liquidation Plan on a timely basis; (ii) use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the Liquidation Plan at the earliest date practicable.

Section 2.      Disbursing Agent.

(a)     Agreement to Serve.  RDA hereby agrees to serve as the Disbursing Agent under the Liquidation Plan.  RDA acknowledges and agrees that in its capacity as Disbursing Agent it shall be acting in a representative capacity as agent of the Company and shall make only those distributions and payments set forth in the Liquidation Plan, as directed by the Company.

(b)     Compensation and Reimbursement.    RDA agrees to serve, without compensation, as the Disbursing Agent under the Liquidation Plan.  RDA shall be entitled to reimbursement from the Company for all of its reasonable and customary out-of-pocket expenses incurred in connection with RDA's service as Disbursing Agent under the Liquidation Plan.  All payments made to RDA, as Disbursing Agent, shall be disclosed in the Final Report, but shall not be subject to Court approval.

(c)     No Bond.  As Disbursing Agent, RDA shall have fiduciary duties to the Company and the Company's creditors who shall be entitled to receive distributions under the Liquidation Plan.  However, RDA shall not be required to give any bond or surety or other security for the performance of its duties.

(d)     Establishment of Accounts.  RDA shall establish and maintain separate, segregated non-interest bearing accounts for: (i) Available Cash, and (ii) all reserves (collectively) established by the Company in accordance with the Liquidation Plan.

(e)     Accounting.  RDA shall provide the Company with statements every calendar quarter (or more frequently if reasonably requested by Company), in reasonable detail, setting forth all payments and other disbursements made by RDA as Disbursing Agent.

(f)     Indemnification, Exculpation and Release.  Upon the Effective Date of the Liquidation Plan, as consideration for RDA serving as the Disbursing Agent, the Company hereby agrees to indemnify, exculpate and release RDA, together with its officers, directors and agents, solely with respect to the actions contemplated by this Agreement from and against all liabilities that may be imposed on, incurred by or asserted against RDA, its officers, directors and agents, in any matter relating to or

2

arising out of, in connection with or as a result of this Agreement, *provided however*, that DEMG shall not indemnify RDA, its officers, directors and agents, for any liability to the extent such liability has resulted primarily from the gross negligence, willful misconduct or fraud of RDA, its officers, directors and agents, as determined by a court of competent jurisdiction in a final non-appealable judgment or order. Nothing contained in this Section shall preclude or impair any holder of an Allowed Claim from bringing an action in the Court against RDA to compel making of distributions contemplated by the Liquidation Plan on account of such Claim.

Section 3.    Parent Advances.

(a)    Procedure. RDA agrees that it shall not make any Parent Advances to the Company, or charge (or seek to charge) any payment by RDA of any costs or expenses incident to the implementation or administration of the Liquidation Plan or the Company's Wind Down to the Company or against RDA's obligation to make Parent Advances, without the consent of the Company (which consent shall be in writing for any cost or expense greater than $7,500).

(b)    Accounting. At the Company's request, RDA shall provide the Company with monthly statements, in reasonable detail, of the Parent Advances.

Section 4.    Miscellaneous.

(a)    This Agreement shall be construed in accordance with, and governed by, the laws of the State of New York. Each of the Parties agrees that any proceeding brought to enforce the rights or obligations of any Party under this Agreement shall be commenced and maintained in the Court, and the Court shall have exclusive jurisdiction over any such proceeding. By its execution and delivery of this Agreement, each Party (i) submits to the exclusive jurisdiction of the Court and (ii) hereby waives and agrees not to assert in any such dispute, to the fullest extent permitted by applicable law, any claim that (A) such Party is not personally subject to the jurisdiction of such court, (B) such Party and such Party's property is immune from any legal process issued by such court or (C) any litigation or other proceeding commenced in such court is brought in an inconvenient forum. The Parties agree that mailing of process or other papers in connection with any such action or proceeding in the manner provided in Section 4(f), or in such other manner as may be permitted by applicable law, shall be valid and sufficient service thereof and hereby waive any objections to service accomplished in the manner herein provided.

(b)    Waiver of Jury Trial. EACH PARTY HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY JURISDICTION IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE AMONG THE PARTIES UNDER THIS AGREEMENT, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

(c)    Complete Agreement, Interpretation and Modification.

3

(i)    This Agreement, the Liquidation Plan and the Stipulation constitute the complete agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements, oral or written, between or among the Parties with respect thereto.

(ii)    This Agreement is the product of negotiation by and among the Parties. There shall be no presumption concerning whether to interpret this Agreement for or against any Party by reason of that Party having drafted this Agreement, or any portion thereof, or caused it or any portion thereof to be drafted.

(iii)    This Agreement may only be modified, altered, amended or supplemented by an agreement in writing signed by RDA and the Company, and upon the consent of the Consenting Senior Noteholders (as defined in the Reorganization Plan). No waiver of any provision of this Agreement or any default, or breach of any covenant hereunder, whether intentional or unintentional, shall be valid unless the same is made in a writing signed by the Party making such waiver, nor will such waiver be deemed to extend to any prior or subsequent default, or breach of any covenant hereunder, or affect in any manner any rights arising by virtue of any prior or subsequent default, or breach of any covenant. The Parties expressly agree that this Agreement may not be modified, revised, or amended by the exchange of electronic messages, including, but not limited to, e-mail and text messaging.

(d)    Execution of Agreement. This Agreement may be executed and delivered (by facsimile, electronic transmission or otherwise) in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same Agreement. Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

(e)    No Solicitation. While RDA agrees herein to vote in favor of the Liquidation Plan, this Agreement is not and shall not be deemed to be a solicitation for votes in favor of any chapter 11 plan or consent to the Liquidation Plan in contravention of applicable non-bankruptcy law or section 1125(b) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, RDA's vote with respect to the Liquidation Plan shall not be solicited until, and any obligation to support confirmation of the Plan is expressly conditioned on, the receipt by RDA of the Liquidation Plan and a copy of the disclosure statement that shall have previously been approved by the Court, after notice and a hearing, as containing adequate information as required by section 1125 of the Bankruptcy Code. Notwithstanding the foregoing provisions, nothing in this Agreement shall require any Party to take any action prohibited by the Bankruptcy Code, the Securities Act of 1933 (as amended), the Securities Exchange Act of 1934 (as amended), any rule or regulations promulgated thereunder, or by any other applicable law or regulation or by an order or direction of any court or any state or federal governmental authority.

4

(f)    Notices.  All notices hereunder shall be deemed given if in writing and delivered, if sent by telecopy, courier or by registered or certified mail (return receipt requested) to the following addresses and telecopier numbers (or at such other addresses or telecopier numbers as shall be specified by like notice):

(i)    If to the Company:

DIRECT ENTERTAINMENT MEDIA GROUP, INC.
c/o RDA Holding Co.
44 South Broadway
White Plains, New York 10601
Telephone:    (914) 244-5262
Facsimile:    (914) 244-7810
Attn:  Andrea Newborn, Esq.

with copies to:

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, NY 10019
Attn:  Barry N. Seidel, Esq.
Telephone:    (212) 277-6500
Facsimile:    (212) 277-6501

(ii)    If to RDA:

THE READER'S DIGEST ASSOCIATION, INC.
44 South Broadway
White Plains, New York 10601
Attn:  William Magill
Telephone:    (914) 244-5439
Facsimile:    (914) 244-7949

with copies to:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Attn:  Joesph H. Smolinsky, Esq.
        Marcia L. Goldstein, Esq.
        Matthew P. Goren, Esq.
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007

Any notice given by delivery, mail or courier shall be effective when received. Any notice given by telecopier shall be effective upon oral or machine confirmation of transmission.

5

(g)     Severability.  If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated, and this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable term, provision, covenant or restriction or any portion thereof had never been contained herein.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first written above.

DIRECT ENTERTAINMENT MEDIA GROUP, INC.

By: _Andrea Lilu_____

Name: Andrea Newton

Title: Secretary

READERS DIGEST ASSOCIATION, INC.

By: _____

Name:

Title:

[Signature Page to Disbursing Agent Agreement]

7

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first written above.

DIRECT ENTERTAINMENT MEDIA GROUP, INC.

By: _____
     Name:
     Title:

READERS DIGEST ASSOCIATION, INC.

By: _William H Magill_____
     Name:     William H. Magill
     Title:     Vice President and Treasurer

[Signature Page to Disbursing Agent Agreement]

7